**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

| | |
|---|---|
| LORALYN MAIXNER, WAYNE MAIXNER, RON MAIXNER, AND ALANE MAIXNER | **COMPLAINT AND JURY TRIAL DEMAND** |
| Plaintiffs, | |
| HAROLD EIDSNESS, CODY JOHNSON, AARON MORK, DOUG FLAAGAN, MICHAEL HAUGLAND, CAMERON SWENSON, NATHAN PARKS , JAYME JO TENNESON, STEVE FORDE, AND THE NELSON COUNTY PARK BOARD, A POLITICAL SUBDIVISION OF THE STATE OF NORTH DAKOTA.[1] | Civil No. _____ |
| Defendants. | |

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the above-captioned plaintiffs hereby demand a jury trial of all issues so triable.

**I.    INTRODUCTION**

This is an action seeking monetary damages and injunctive relief to redress illegal conduct by the defendants, who deprived the plaintiffs of various rights and privileges secured by the Constitution and laws of the United States, specifically the First and Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C.§1983.

---

[1] All individual person defendants are hereby named in their individual capacities for the plaintiffs' claims for both compensatory and injunctive relief.  Political subdivision Nelson County Park Board is named for the plaintiffs' claims for injunctive relief only.

## II.    JURISDICTION

This action seeks to enforce rights guaranteed by the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983.  Jurisdiction is based upon 28 U.S.C. § 1331 (federal question) and 28 U.S.C, § 1343 civil rights)

The substantive federal civil rights claims are brought pursuant to 42 U.S.C. § 1983.

Venue is proper in the United States District Court for the District of North Dakota, Eastern Division of this District. Under 28 U.S.C. § 1391(b), because all parties reside in this District and the Eastern Division and because all of the events or omissions giving rise to the claims of the plaintiffs occurred within this District and Division.

## III.    PARTIES

1. Plaintiff LORALYN MAIXNER, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota.

2. Plaintiff WAYNE MAIXNER, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota.

3. Plaintiff RON MAIXNER, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota.

4. Plaintiff ALANE MAIXNER, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota.

5. Defendant HAROLD "HARLEY" EIDSNESS, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota, and a member of the Nelson County Park Board.

6. Defendant CODY JOHNSON, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota, and simultaneously, Chair of the Nelson County Board of Commissioners, and Chair of the the Nelson County Park Board.

7. Defendant AARON MORK, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota, and simultaneously, Vice Chair of the Nelson County Board of Commissioners, Nelson County States Attorney, and a member of the Nelson County Park Board.

8. Defendant DOUG FLAAGAN, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota, and simultaneously, a member of the Nelson County Board of Commissioners, and a member of the Nelson County Park Board.

9. Defendant MICHAEL HAUGLAND,, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota, and simultaneously, a member of the Nelson County Board of Commissioners, and a member of the Nelson County Park Board.

10. Defendant CAMERON SWENSON, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota, and simultaneously, a member of the Nelson County Board of Commissioners, and a member of the Nelson County Park Board.

11. Defendant NATHAN PARKS, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota, and simultaneously, a member of the Nelson County Board of Commissioners, and a member of the Nelson County Park Board.

12. Defendant DENIS FAHEY, is, and at all times hereinafter mentioned was, a resident of Nelson County in the State of North Dakota, and a member of the Nelson County Park Board.

13. Defendant JAYME JO TENNESON is the State's Attorney for Nelson County, North Dakota, and the legal advisor to the Nelson County Board of Commissioners and the Nelson County Park Board.

14. Defendant STEVE FORDE is a former member of the Nelson County Park Board, who was an active member of the Board on November 19, 2024, and on that day voted to non-renew the plaintiff's camper leases with the Board.

15. Defendant NELSON COUNTY PARK BOARD, is, and at all times hereinafter mentioned was, and is, a political subdivision of the State of North Dakota

## IV.    FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

1.    The above-named individual person defendants are all members of the Nelson County Park Board, a political subdivision of the State of North Dakota, which controls and operates an entity known as "Stump Lake Park", a multi-purpose recreational area, which includes Stump Lake itself., and contiguous land which

3

surrounds the lake.  This land has been subdivided into "lots", which are subject to one-year leases that expire on March 31ˢᵗ of each year.

2. The membership of the Nelson County Park Board includes all of the members of the Nelson County Board of Commissioners, plus two additional Park Board members.

3. Pursuant to a lease document entitled "Stump Lake Seasonal Camper Rental Agreement", the plaintiffs are currently leasing a designated "campsites" from the Nelson County Park Board for A term which extends from April; 1, 2024, **through March 31, 2025**.

4. By way of context, plaintiffs Wayne Maixner and Loralyn Maixner have camped at Stump Lake Park for twenty-seven (27) consecutive years, and plaintiffs Alane and Ron Maixner have camped at Stump Lake Park for eleven (11) consecutive years under these renewable one-year-term leases.

5. In March of 2024, the plaintiffs prepared a document entitled, "Suggestions For Stump Lake Park", which was intended to be helpful in identifying aspects of the park experience which could be improved upon to benefit the using public for the 2024-2025 Summer season.  The suggestions were intended to present constructive ideas to the Nelson Couty Park Board.

6. This "Suggestions For Stump Lake Park" document read as follows:

"**Suggestions for Stump Lake Park - 2024**

Can the "junk art" be removed from previous years?  Suggest leave it up for 1 year from the camp.  Currently old art is shoved into the trees and forgotten. It's unsightly, and a good place for wild animals.

Provide seasonal campers with a printed set of rules.

We would like to see a yearly "Camper Directory" for the seasonal campers. Maybe even a Facebook page for the seasonal campers?   Rules document could also be posted here.

**Grounds:**

Plant some grass in shaded areas, around trees, temporary sites.
- Mow only when NECESSARY.  Trim around structures and trees.
- Install some off ground garbage (with drain holes) at the Pavillion, Playground, Court, Golf Course.
- Seasonal campers had a rate increase a few years ago to cover treating the roads for dust. This has not been happening.   In addition, money was set aside for aerial spraying for mosquitos.  This also has never been done.

4

- Request the golf cart path from the main campground towards the east be graveled.

**Trees:**

Stump Lake Park is losing too many trees for a variety of reasons. Establish a tree program.  Plant some each year and monitor carefully what trees are taken down (and why!)   Possibly investigate a program with local forestry services?

**Tennis Court:**

Pickleball striping.  Pickleball is the fastest growing sport, and good clean fun for all ages.   Many people play up there.  Spring clean and maintain court during the summer and fall.

**Miniature Golf Course:**

Upkeep and Maintenance.  Many structures are damaged due to weather and vandals. Monitor who uses it, possibly charge a small fee to use the putters and balls (so they come back!)   If there aren't cameras on the course, there should be.  Benches, garbage containers.  Make it a bit more appealing, add a quality sign for   "rules of use".

**Weekend Campers:**

Weekend campers do not typically get any printed rules for their stay.  This information should be on the park website, and a map/rules with a signature (acknowledging the rules) of responsible party with vehicle info, etc.

Check in to on-line camper registration.  First night should be charged up front, and non-refundable if they don't show.

**The Maixner plaintiffs** Park experience might be improved for users of the seasonal facility were received with hostility by the Park Board. As the plaintiffs were leaving the September 10, 2024, Park Board meeting, a recording from a live microphone at the Board's table captured the statement, "**<u>Are these our three problem makers</u>**?".

10. Thereafter, the approved minutes from the September 10th **<u>Park Board meeting stated that the plaintiffs were present at the Park Board's September 10, 2024, meeting to, "voice their complaints about the park management this season</u>**."

11. After the plaintiffs registered their objections to this language from the September 10th meeting, Park Board Chair Cody Johnson told plaintiff Loralyn Maixner on October 7, 2024, "Jayme Tennyson (Park Board member and State's Attorney) told

me I can leave the minutes alone" because that is what the Park Board thought had happened.  Tennyson also stated that the minutes from the September 10th meeting of the Park Board had already been approved and would not be changed.

12.  During the period from October 18, 2024 through October 25, 2024, existing Stump Lake Park lessees received letters from the Nelson County Park Board along with their respective electric bills for the preceding Summer.  **The Board asked in the letter if the plaintiffs wanted to be "invited back for the 2025 camping season"**  All of the plaintiffs -- both Maixner families  -- replied YES and sent it back to the park board with payment.

13.  On November 19, 2024, the Nelson County Park Board wrote a letter to each  of the plaintiffs, saying **"At the Nelson County Park Board meeting onTuesday, November 19, 2024, itIt was motioned and approved that your contract for campsite numbers 19 (and 25) at Stump Lake Campground will not be renewed for the 2025 camping season.  Please have everything removed and the campsite clean before March 31, 2025.  Signed by Cody Johnson, Chair. Nelson County Park Board."**   Although the letters were dated November 19, 2024, they were not postmarked until November 25, 2024.  The plaintiffs received their letters on November 27, 2024.

14.  The plaintiffs had not been in attendance at this November 19, 2024, Nelson County Park Board meeting.  Indeed, there had been no advance notice that the Board would be taking such action – **with no reason for the non-renewals of the Maixner plaintiffs having been announced, recorded or otherwise given by the Park Board**.

15.  Afterwards, Park Board Chair Cody Johnson was approached and asked for as reason or explanation for why the Maixner plaintiffs' lease contracts were non-renewed by the Board.  Chairman Johnson responded that Nelson County Park Board member and Nelson County State's Attorney, defendant Jayme Jo Tennenneson had statedthe Board at the November 19, 2024, Park Board meeting that, "**These people are always complaining , just terminate their Jo Tcontracts."**

16.  It should be noted that the Maixner plaintiffs' campers and related equipment located upon their leased premises include the campers themselves, gazebos, wooden decks and other appurtenances and equipment are all deeply embedded in seasonal snowpack, and it is anticipated that snow and ice will continue to seal in place the campers and associated installations and equipment through March 31, 2025, the date upon which the plaintiffs' current leases are due to expire by their terms.

## IV.   LEGAL CLAIMS

A. **The Maixner plaintiffs' Retaliation claims under the Petition Clause and/or the Speech Clause of the First Amendment to the United States Constitution.**

1. Paragraphs 1 through 16 of the Factual Allegations in the preceding section of the instant Complaint are hereby incorporated wholly herein by reference.

2. To prevail on a retaliation claim under either the Speech or Petition Clauses of the First Amendment, a plaintiff must ultimately demonstrate by a preponderance of the evidence that: **(1)** he or she engaged in conduct protected by the First Amendment, **(2)** defendants then took adverse action against him; and **(3)** a causal connection exists between the protected conduct and the adverse action such that the former "was a motivating factor" in the latter. See, e.g., *Womens Intgerart Center, Inc. v. New York Economic Development Corporation*, 2005 U..S. Dist. LEXIS10027, 2005 WL 1241919, \*\*71-81 (S.D.N.Y. May 23, 2005), *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir. 1999) (citing *Mt. Healthy School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283-87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

3. In communicating with the Nelson County Park Board as alleged herein, the Maixner plaintiffs unquestionably engaged in First Amendment protected speech directed toward each member of Park Board, with each such Park Board member having voted in an official action bv of the Board to **deny** the plaintiffs' renewal of their Stump Lake Park leases, which are now scheduled to expire on March 31, 2025.with the Board. As such, the defendants wrongfully retaliated against the Maixner plaintiffs for the plaintiffs' protected speech in offering constructive suggestions to the Park Board for the public purpose.

4. It is well settled that **the right of American citizens to petition government** "**for redress of grievances is among the most precious of the liberties safeguarded by the Bill of Rights. . . intimately connected both in origin and in purpose, with the other First Amendment rights of free speech and free press**," *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222, 88 S. Ct. 353, 19 L. Ed. 2d 426 (1967), and **this "right of petition applies with equal force to a person's right to seek redress from all branches of government**." *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988) (*bold underlined emphasis added*).

5. While the subject matter of the Maixner plaintiffs' speech directed toward the Nelson County Park Board did unquestionably address matters of public concern, **a cause of action based on the Petition Clause of the First Amendment need not be based upon speech upon a matter of public concern.** Indeed, the "public concern" requirement does not apply to retaliation

7

claims based on the Petition Clause. *See Friedl v. City of New York,* 210 F.3d 79, 87 (2d Cir. 2000) ("We reject the contention. . . that where the plaintiff alleges retaliation for protected speech in the form of a petition to the government, he must establish that the speech contained in his petition to the government was a matter of public concern.").   Moreover, seeking relief through litigation or by **lodging complaints with governmental agencies is protected conduct under the Petition Clause**. *See, Gagliardi v. Village of Pawling,* 18 F.3d 188, 194-195 (2d Cir. 1994) ["**The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment.**"]; *Dougherty v. Town of North Hempstead, Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir. 2002) [filing of civil lawsuit for denial of building permit was protected First Amendment conduct].,Additionally, Speech is not exempted from First Amendment protection simply because a portion of it relates to matters of private, versus public, concern. See, e.g., *Mongielo v. Smith*, 2017 U.S. Dist. LEXIS 74498, 2017 WL 2119216 ; **9-10 (W.D. N.Y. May 16, 2017); Wallace v. Suffolk Cty. Police Dep't, 396 F. Supp.2d at 258 ("Defendants contend that the personal nature of Plaintiff's complaints precludes a finding that Plaintiff's speech pertained to matters of public concern. While portions of Plaintiff's speech relate to experiences unique to Plaintiff, much of the speech concerned matters of great importance to the general public.").

6. So the fact that a major portion of the Maixner plaintiffs' speech concerned general matters of public concern, relating to suggested improvements for the operations of Stump Lake Park constituted speech on as matter of public concern for the purposes of the plaintiff's First Amendment Speech Clause claims.

7. Reduced to the essentials, therefore, the Maixner plaintiffs have made viable claims consecutively, under both the First Amendment Petition Clause and the First Amendment Speech Clause..

   A. **The Maixner plaintiffs' Retaliation claims under the Equal Protection Clause  of the Fourteenth Amendment to the United States Constitution**

8. Paragraphs 1 through 16 of the Factual Allegations in the preceding section of the instant Complaint, and Paragraphs 1 through 7 of the current Legal Claims section of the Complaint are hereby incorporated wholly herein by reference.

9. Individuals and organizations may assert a cause of action under the Fourteenth Amendment's Equal Protection Clause. *See Iowa-Des Moines Nat'l Bank v. Bennett,* 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265 (1931) (upholding Equal

Protection claim brought by banks challenging discriminatory state taxation statute); *Metropolitan Life Insur. Co. v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1984) (Recognizing Equal Protection Claim brought by out-of-state insurance companies challenging state insurance statute that treated out-of-state insurers less favorably).

10. In alleging that the Nelson County Park Board defendants subjected the Maixner plaintiffs to certain "unequal, retaliatory and vindictive" treatment not visited upon other Stump Lake camp lessees similarly situated., the plaintiffs have stated an Equal Protection violation based, alternatively, on the theories of "selective enforcement" and "a class of one". **To prevail on a selective enforcement claim, a plaintiff "must ordinarily show (1) the person, compared with others similarly situated, was selectively** treated; and **(2**) that **such selective treatment was based on impermissible considerations such as** race, religion, **intent to inhibit or punish the exercise of constitutional rights**, or malicious or bad faith intent to injure a person." *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 16 (2d Cir. 1999) (citations and internal quotations omitted); *Cobb v. Pozzi,* 363 F.3d 89, 110 (2d Cir. 2003) (same).

11. In addition, **a successful Equal Protection claim may be "brought by a 'class of one',where the plaintiffs alleges that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment**." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam). However, unlike a selective enforcement claim, a "class of one" claim is dependent on the plaintiff's ability to prove not that he or she was mistreated for an impermissible reason, but merely that the defendant's reason for treating him or her differently was wholly arbitrary or irrational, regardless of defendant's subjective motivation for doing so. *Cobb,* 363 F.3d at 110; *African Trade and Information Center, Inc. v. Abromatis,* 294 F.3d 355, 363 (2d Cir. 2002).

12. In the instant case as alleged above herein, the Maixner plaintiffs were "**compared with others similarly situated . . . selectively** treated", and that "**such selective treatment was based on impermissible considerations such as** race, religion, **intent to inhibit or punish the exercise of constitutional rights**", such as First Amendment Speech Clause" or "First Amendment "Petition Clause" rights.

13. **Alternatively and consecutively, the Maixner plaintiffs were also 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment**."

14. In acting as described above herein, the defendants, acting jointly and severally, retaliated against the plaintiffs for the plaintiffs' exercise of their rights guaranteed under the First Amendment Petition Clause, the First Amendment

Speech          Clause,          and          the          Equal          Protection
Clause of the Fourteenth Amendment.

15. The defendants' actions violated the Maixner plaintiffs' clearly established right to petition the Nelson County Park Board  the First Amendment Petition Clause, and to speak to the Park Board  under the First Amendment Speech Clause, and the right to be free from arbitrary treatment by the Nelson County Park Board and its individual members.in violation of the plaintiffs rights under the Equal Protection Clause  of the Fourteenth Amendment to the United States Constitution.

16. The defendants acted with intent to violate, or with reckless indifference to, the plaintiffs' clearly established constitutional rights, as described above herein.

17. At all times the defendants were acting under color of state law,

18. As a direct result of the defendants' conduct, the plaintiffs suffered actual damages, attorney's fees and costs.

## VI.      DAMAGES

19. On account of the defendants' actions and violations of their rights as set forth above herein, the plaintiffs suffered actual damages, including pain, suffering, humiliation and emotional distress, and lost tangible benefits

20. The plaintiffs are entitled to recover damages, attorneys fees, costs, and punitive damages.

21. The plaintiffs demand prejudgment interest on all elements of out-of-pocket loss including attorneys fees.

## VII.    PRAYER FOR RELIEF

WHEREFORE the plaintiffs request that this Court:

1. Assume jurisdiction of this action;

2. Enter judgment against the defendants and in favor of the plaintiffs in the sum                                                              of
Four Hundred and Fifty \ Thousand Dollars ($450,000.00);

3.  Award the plaintiffs compensatory damages, including prejudgment interest on any out-of-pocket damages;

4.  Impose punitive damages against each individual defendant;

5.  Award plaintiffs all costs and disbursements incurred in the prosecution of this action, including reasonable attorney's fees under 42 U.S.C.§1988; and enter such other and further relief as the Court should deem just and proper.

Dated tis 20th day of February, 2025,


/s/ David C. Thompson

David C. Thompson (ND #03921)
Attorney at Law
**DAVID C. THOMPSON, P.C.**
321 Kittson Avenue
Grand Forks, ND, 58206-5235
(701) 775-7012 (*telephone*)
dct@rrv.net (*electronic mail*)

**COUNSEL FOR PLAINTIFFS LORALYN MAIXNER, WAYNE MAIXNER
RON MAIXNER, AND ALANE MAIXNER**